**WO**                                                                                                               SVK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Stephen Frank Karban, | No. CV 10-0406-TUC-DCB |
| Plaintiff, | |
| vs. | **ORDER** |
| Charles Ryan, et al., | |
| Defendants | |

Plaintiff Stephen Frank Karban brought this action pursuant to 42 U.S.C. § 1983. Plaintiff moves for a Preliminary Injunction directing Defendants to cease interfering with Plaintiff's incoming legal research material. (Doc. 14.) Defendants do not respond but the Court finds that no response is necessary.

The Court will deny the motion.

**I.    Background**

In Count I, Plaintiff claimed that his First Amendment rights were violated by Defendants Williams, Barry, and Jane and/or John Doe, when they, as employees of the Arizona Department of corrections (ADC) at the Arizona State Prison Complex-Tucson Mail Room, "deliberately lost, returned, withheld and/or refused to deliver to the Plaintiff, his incoming legal case law, sent via priority U.S. Mail." (Doc. 1.) The Court directed Williams and Barry to answer these allegations. (Doc. 11.) The Court also directed other Defendants to answer additional counts not at issue here and dismissed some claims and Defendants. (Id.)

1    Plaintiff now asks the Court to direct Defendants to cease interfering with his
2 incoming legal research material. (Doc. 14 at 1.) He claims that this would not require
3 extraordinary Court intervention other than to require Defendants to follow the established
4 mail policy, Department Order (DO) 914. (Id.)

5    Plaintiff alleges that since arriving at the Winchester Unit, he has had continuing
6 issues regarding mishandling of priority legal research materials. (Id. at 2.) The case law
7 is being sent from Yolanda Berg, who Plaintiff describes as a "single independent source
8 with online access to legal research material." (Id.) Plaintiff uses a delivery confirmation
9 option to verify that materials arrived at the prison and to determine when they arrived; this
10 option costs more money. (Id.)

11    Plaintiff asserts that DO 914 details what inmates cannot receive and directs prison
12 staff what to do if prohibited mail is sent and that it establishes time frames for mail
13 deliveries. (Id.)

14    Plaintiff alleges that two priority boxes of legal research "vanished" in October. (Id.
15 at 3.) An envelope was returned to Ms. Berg marked "Can't send score keeping and multiple
16 sheets of blank paper to inmate. Inmates get paper from facility only." Plaintiff asserts that
17 the books did not contain blank paper or score keeping paper; rather, there were multiple
18 forms used to analyze trial transcripts to determine how trial objections were ruled upon.
19 (Id.)

20    Plaintiff also alleges that mail is to be distributed within 24 hours, with an exception
21 if the mail is detrimental to the safe and secure operation of the institution. Plaintiff asserts
22 that his research material does not qualify for rejection. Also, Plaintiff is to be notified when
23 unauthorized mail is received. Plaintiff alleges that he received only one such notification
24 when something was returned in January because it contained "case law other than addressed
25 inmate." (Id. at 3.)

26    Plaintiff claims that non-intervention will effect the litigation of Plaintiff's criminal
27 and civil cases. (Id.) He contends that he is likely to succeed on the merits of his claim
28 because his evidence shows that the priority mail reached the prison. (Id. at 5.) Plaintiff

asserts that under the mail policy, he is entitled to receive legal research material and he is not receiving priority mail deliveries within 24 hours. (Id.) Plaintiff alleges that he will experience irreparable harm because he currently has a Petition for Review pending in the Arizona Supreme Court, will soon have a negligence claim in Superior Court, and has civil complaints in the district court. (Id. at 6.) He also asserts that he is unable to have essential resources for research. He claims that if he is unable to determine who is interfering with the mail, he will be unsuccessful in his case. (Id.) He asserts that there is a likelihood of irreparable harm. Plaintiff argues that the balancing of the equities favors him because the prison designed the mail policy. (Id. at 6-7.) He attaches several exhibits to his motion, including an affidavit from Yolanda Berg, excerpts from the Mail Policy, a Contraband notification to Lenny Berg, and a "Schedule of Priority Mailings," which was compiled by Plaintiff. (Id., Exhibits A-D.)

## II.     Preliminary Injunction Standard and Analysis

A preliminary injunction is an extraordinary and drastic remedy and "one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (per curiam) (quoting 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948, pp. 129-130 (2d ed. 1995)). To obtain a preliminary injunction, the moving party must show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Resources Def. Council, Inc., 555 U.S. 7, 129 S. Ct. 365, 374 (2008); Am. Trucking Ass'n, Inc. v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009). The movant has the burden of proof on each element of the test. Envtl. Council of Sacramento v. Slater, 184 F. Supp. 2d 1016, 1027 (E.D. Cal. 2000).

In addition, the "serious questions" version of the sliding scale test for preliminary injunctions remains viable after the Supreme Court's decision in Winter. Alliance for the Wild Rockies v. Cottrell, 622 F. 3d 1045, 1052 (9th Cir. 2010). Under that test, a preliminary injunction is appropriate when a plaintiff demonstrates that "serious questions

- 3 -

1 going to the merits were raised and the balance of hardships tips sharply in [plaintiff's]
2 favor." Id., citing Lands Council v. McNair, 537 F.3d 981, 987 (9th Cir. 2008) (en banc).
3 This approach requires that the elements of the preliminary injunction test be balanced, so
4 that a stronger showing of one element may offset a weaker showing of another.  "For
5 example, a stronger showing of irreparable harm to plaintiff might offset a lesser showing
6 of likelihood of success on the merits." Alliance for the Wild Rockies, 622 F. 3d at 1053.
7 Plaintiffs must also satisfy the other Winter factors, including the likelihood of irreparable
8 harm. Id.

9      As noted under either test, Plaintiff must demonstrate that he will suffer irreparable
10 harm in the absence of the requested relief.  Plaintiff offers nothing but speculation regarding
11 the harm. "[S]peculation cannot substitute for evidence" of irreparable harm. Brewer v.
12 Landrigan, 131 S. Ct. 445 (2010) (quoting Baze v. Rees, 553 U.S. 35, 50 (2008)) (quoting
13 Helling v. McKinney, 509 U.S. 25, 33 (1993)).  Plaintiff's own evidence shows that he was
14 sent 28 packages or boxes or envelopes and that he received 19 of them.  Plaintiff does not
15 even allege that Berg will be sending additional documents.  Moreover, the prison mail
16 policy permits staff to "open, inspect, and read incoming mail to prevent criminal activity and
17 prevent inmates from receiving contraband or other material that may be detrimental to the
18 safe and orderly operation of the institution." (Doc. 14, Ex. B, DO 914, 914.02 1.5.)  The
19 Court will not direct the prison to accept and deliver all mail simply because Plaintiff asserts
20 that it will contain legal research.
21      The motion is denied.
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

1 **IT IS ORDERED that** Plaintiff's Motion for a Preliminary Injunction (Doc. 14) is
2 **denied.**
3       **DATED this 27th day of January, 2011.**

David C. Bury
United States District Judge